UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DISTRICT

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:17CR00198 JAR |
| ) | |
| GERALD FITZGERALD HUNTER, ) | |
| ) | |
| Defendant. ) | |

### GOVERNMENT'S RESPONSE TO DEFENDANT'S SENTENCING MEMORANDUM

COMES NOW the United States of America, by and through its attorneys, Sayler A. Fleming, United States Attorney for the Eastern District of Missouri, and Erin O. Granger, Assistant United States Attorney for said District, and hereby files its response to Defendant Hunter's Sentencing Memorandum, in which he requests a below-guideline sentence of 240 months.  Doc. 883.  For reasons outlined below, the Government opposes a below-guidelines sentence.

After three years on the run as a fugitive, a jury convicted Defendant of one count of conspiracy to distribute 5 kilograms or more of cocaine, one count of conspiracy to distribute 400 grams or more of fentanyl, one count of possession with intent to distribute 400 grams or more of fentanyl, and two counts of conspiracy to commit money laundering.  Following Defendant's conviction, the United States Probation Office prepared and issued a Presentence Investigation

1

Report ("PSR") and calculated the Defendant's guidelines as life.[1]

By way of his Sentencing Memorandum citing 18 U.S.C. 3553(a), Defendant urges the Court to grant him a downward departure and/or variance pursuant to 18 U.S.C. 3553(a) and sentence him to a term of imprisonment of 240 months.[2]  In light of the conduct of the defendant, the scope of his drug trafficking organization, the time period over which the illegal conduct occurred, the deliberate and continuing steps utilized to evade law enforcement, the sophistication of the money laundering, and the steps taken post-indictment to continue the distribution of fentanyl, as well as the advisory sentencing guideline range, the Government respectfully requests that the Court impose a life sentence in this case.   Although the Government does not make this request lightly, the Defendant's conduct and criminal record warrant this sentence.

## ARGUMENT

In *United States v Haack*, 403 F.3d 997 (8th Cir. 2005), the Court of Appeals described the process that the District Court should follow in determining a sentence in light of *United States v. Booker*, 543 U.S. 220 (2005).   The Court should first determine the guideline range based upon all enhancements and the defendant's criminal history.   Second, the Court should determine if any guideline departures apply.   Finally, the Court should determine if the guideline range is reasonable considering all factors listed in Title 18, United States Code, Section 3553(a). *Haack*, 403 F.3d at 1002-1003.

---

[1] Defendant's adjusted offense level is 48. Under United States Sentencing Guidelines (USSG) § 5, Part A n.2 however, "in rare cases, a total offense level… of more than 42 is to be treated as an offense level of 43."

[2] In one paragraph, Defendant's sentencing memorandum requests a sentence of 120 months (Doc. 883, p. 2).   The remainder of the memorandum however, repeatedly argues for 240 months.   The Government assumes that the request for 120 months is a typographical error.

**Advisory Sentencing Guidelines**

The advisory sentencing guideline offense level for Defendant is 43. This is based upon more than 27 kilograms of fentanyl and 41 kilograms of cocaine, maintaining a drug premises for the distribution of controlled substances, and committing the offenses as a pattern of criminal conduct engaged in livelihood. Additionally, Defendant has received a two-level increase because the offenses involve a Section 1956 money laundering offense, a two-level increase for sophisticating laundering, and a four-level adjustment for leadership. This adjustments result in a total offense level of 43. This offense level carries a recommended term of life imprisonment.

**Title 18, United States Code, Section 3553(a) factors**

Title 18, United States Code, Section 3553(a) lists the following relevant factors for the Court to consider in determining a sentence:

1) the nature and circumstances of the offense and the history and characteristics of the defendant;

2) the need for the sentence imposed --
   (A)  to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

   (B)  to afford adequate deterrence to criminal conduct;

   (C)  to protect the public from further crimes of the defendant; and

   (D)  to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

3) the kinds of sentences available;

4) the kinds of sentences and the sentencing range established for –
   (A)  the applicable category of offenses committed by the applicable category of defendant as set forth in the guidelines . . .

5) any pertinent policy statement –

>    (A) issued by the Sentencing Commission . . .
>
> 6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct . . .

The application of these factors in this case supports a life sentence and the Government highlights some of the pertinent factors in this memorandum.

### (A) The nature and circumstances of the offense and the nature and characteristics of the defendant weigh heavily against a downward variance.

The Court must first consider the nature and circumstances of the offense and the history and characteristics of the defendant. The evidence in this case was presented over seven days during a jury trial, and so the Government will not reiterate it *in toto* here. Defendant's portrayal of his conduct as "no more blameworthy or culpable than any other defendant who ran a drug trafficking conspiracy" widely mischaracterizes Defendant's criminal behavior. Defendant was engaged in large scale, multi-city drug trafficking – the ultimate object of which was to bring cocaine and fentanyl from Los Angeles, California to St. Louis, Missouri, a region already beset with drug-fueled dependence and violence. Evidence at trial established that this organization was highly sophisticated and moved substantial amounts of cocaine and fentanyl throughout the United States.

The distribution network developed by Defendant covered a large segment of the Midwest as well as locations in California and Georgia. Defendant actively procured and distributed an exorbitant amount of cocaine at trial. Testimony at trial adduced that Defendant was not distributing mere ounce quantities, but rather multi-kilogram quantities of cocaine and fentanyl. Indeed, on April 27, 2017, law enforcement seized roughly 27 kilograms of fentanyl which were shrink wrapped into separate 1 kilogram bricks. At trial, Cooperating Witness #1 (CW#1)

testified that members of the organization would take kilograms of fentanyl supplied by Defendant and then "break them down" with dilutants such as Dormin or Quinine to maximize the amount of product.  For example, one kilogram of fentanyl could be stretched into two or three kilograms and sold accordingly.   This not only maximized profit, but it also maximized dosage units.   Given the average user ingests approximately 1/10 a gram of fentanyl, the quantities supplied by defendant are staggering.

Evidence established that Defendant caused the cocaine and fentanyl to be transported secreted in vehicles, stored in various shipping containers including large microwave boxes and eventually, concealed in furniture and shipped in moving trucks.   After the cocaine and fentanyl were received from California, they were unloaded, "broken down" and sold on the streets of St. Louis.

The damage that these drugs have done to this community cannot be overstated.   Fentanyl is a highly dangerous synthetic opioid that is 100 times stronger than morphine.   Members of this drug trafficking organization were aware of the dangers of this drug. CW#1 testified that they utilized face masks to prevent inhaling the drug.   Indeed, law enforcement seized at least one respirator from the residence at 3838 Park Avenue.   Despite this awareness, Defendant continued to distribute this illicit drug and accumulated a large amount of proceeds from the sale of these drugs.

The evidence presented at trial reflects that Defendant dealt primarily in cash leaving little or no financial trail.   Defendant accumulated enough wealth to purchase a residence in Los Angeles, California, as well as make improvements on that property.   Additionally, he purchased designer clothing, carried large amounts of cash, and wore expensive jewelry.   This is proven

when Defendant was arrested on May 12, 2020. DEA Special Agent Franklin Brito seized over $220,000 in United States currency from Defendant, two Gucci watches, a Rolex watch, four carat diamond stud earrings, and a Louis Vuitton bag. SA Brito explained that Defendant was residing in an affluent apartment building in Playa Vista, California. As Defendant was not employed or paying taxes during this time, the evidence establishes that his wealth was generated from the sale of controlled substances.

Defendant argues that "there is nothing from Mr. Hunter's personal background to suggest that, after his experience in federal court, he would even think about recidivating." This statement is belied by Defendant's criminal history and conduct in this case. In 1999, Defendant was sentenced to 200 months in the Bureau of Prisons (BOP) for Conspiracy to Distribute Cocaine (2:97 CR 00270 RGK). Despite this lengthy prison sentence and subsequent court-ordered supervision, Defendant continued to engage in drug trafficking. CW#1 testified Defendant was engaged in drug trafficking as early as 2011, right after he was released from prison.

Although Defendant cites his age as a reason for a downward departure and variance from the U.S. Sentencing Guidelines, the Government notes that Defendant was in his 50s during the time period in which he was distributing large quantities of fentanyl and cocaine. Clearly, his age never deterred him from engaging in his criminal enterprise. Instead, Defendant took measures to insulate himself from the detection of law enforcement. Recognizing that he was a fugitive, Defendant took measures to conceal his identity to avoid apprehension. After his escape from law enforcement on April 27, 2017, Defendant was able to evade arrest for three years. During that time, with the assistance of co-defendant Temne Hardaway, he obtained a fraudulent identification in the name of Kenyatta Conrad Slade. Following Hardaway's arrest, Hunter

6

obtained two other fraudulent identifications in the name of Delano Young.

Defendant's conduct as a fugitive also establishes that Defendant remained undeterred from criminal conduct. Neither the seizure of fentanyl nor the arrests of members of his organization caused Defendant to stop distributing controlled substances. Following the apprehension and federal indictment of various co-conspirators, Defendant didn't cease his operations. He simply moved his drug trafficking organization from St. Louis, Missouri to Atlanta, Georgia. Witnesses testified at trial that he continued to distribute fentanyl through co-defendant Hardaway. Cooperating Witness #2 (CW#2) testified that he met with Defendant in 2018 and that Defendant advised him that he could obtain controlled substances for CW#2. CW#2 testified that Defendant agreed to provide CW#2 with 2-3 kilograms of fentanyl for $42,000 a kilogram. Thereafter, on May 23, 2018, CW#2 met with Hardaway and Defendant at a residence Defendant had purchased with drug proceeds. During that meeting, Hardaway told CW#2 that Defendant could procure kilograms of fentanyl for CW#2.

Clearly, at no time did Defendant halt his drug trafficking. Instead, in the wake of a federal indictment, Defendant remained committed to an illicit lifestyle. In the Government's view, in light of the conduct committed by the defendant with this specific criminal history and these specific characteristics, he is not entitled to a downward variance.

**(B) A sentence of 240 months is not sufficient to achieve the statutory sentencing objectives contained in Section 3553(a)(2)**

As stated above, in fashioning a sentence, this Court is obliged to consider the statutory objectives of sentencing as enumerated in Section 3553(a)(2). Those objectives include:

the need for the sentence imposed –

7

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. §3553(a)(2).

The Government will not belabor the seriousness of the offense, as it has addressed that issue elsewhere herein. In the Government's view, a sentence of 240 months would not adequately promote respect for the law, particularly in light of Defendant's prior criminal history and escalating criminal conduct in this case. As stated earlier, following a federal indictment in this case, Defendant continued to engage in drug trafficking. Certainly, Defendant should be punished commensurate with his conduct, and the sentence must be significant so as to adequately deter Defendant and others from engaging in similar conduct in the future. Nothing in his history, or the present conduct, suggests that Defendant will be deterred by anything but the strongest of sentences, and the public at large simply must be protected from any future crimes that he is almost certain to commit. Indeed, the scope of Defendant's enterprise, the duration of the criminal activity, the danger to a large number of people, the number of people he brought into his criminal enterprise, his continuation of this criminal enterprise despite multiple interventions by law enforcement, his continued drug trafficking activity after indictment, and his lack of candor regarding his financial status all support the recommendation of the sentencing guidelines for an effective term of life imprisonment.

## **CONCLUSION**

For the foregoing reasons, the Government respectfully requests that the Court deny Defendant's request, decline to grant a downward departure and/or variance, and impose a life sentence in this case.

Respectfully submitted,

SAYLER A. FLEMING
United States Attorney


 s/ *Erin Granger*
ERIN O. GRANGER, #53593MO
Assistant United States Attorney
111 S. Tenth Street, Room 20.333
St. Louis, Missouri 63102
Erin.Granger@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on March 2, 2022, the foregoing motion was electronically with the Clerk of the Court to be served by way of the Court's electronic filing system upon all counsel of record.

 s/ *Erin Granger*
ERIN O. GRANGER, #53593MO
Assistant United States Attorney